[No. 63783-5-I.   Division One.   February 8, 2010.]

TIMOTHY J. RUIZ, *Appellant,* v. THE STATE OF WASHINGTON ET AL., *Respondents.*

*Brett A. Purtzer*, for appellant.

*John G. Fritts* and *David M. Jacobi* (of *Wilson Smith Cochran Dickerson*) and *Robert M. McKenna, Attorney General*, and *Catherine Hendricks, Assistant*, for respondent.

¶1 GROSSE, J. — Notwithstanding any statute, rule, or common law doctrine to the contrary, the legislature has determined the state and forest landowners should be immune from liability for personal injury caused by forest practices within a designated riparian zone. Here, the driver sustained injuries when part of a tree fell on a vehicle he was driving westbound on State Route (SR) 410. The tree that caused the injury was clearly located within a designated riparian zone. The trial court's dismissal is affirmed.

## FACTS

¶2 On December 12, 2004, Timothy Ruiz, returning from a snowmobiling trip, was injured by a tree that fell and hit his vehicle. The Washington State Patrol (WSP) and the Department of Transportation (DOT) had closed the roadway earlier in the day, but reopened it before Ruiz travelled it. After Ruiz's vehicle was struck by the tree, the WSP again closed the road.

¶3 White River Forests LLC owned land in the Bridgecamp area on the White River adjacent to SR 410 where Ruiz's accident occurred. Hancock Natural Resource Group Inc. through its subsidiary Hancock Forest Management Inc. (Hancock) managed and controlled the property, including the cutting and selling of timber. Hancock applied to the Department of Natural Resources (DNR) to harvest timber in the area in 2004. Although White River Forests was listed as both the land and timber owner, Timothy McBride of Hancock signed the application in the spaces provided for the land and timber owners. Prior to harvest, representatives from both the Department of Fish and Wildlife (DFW) and DNR met with Hancock's McBride at the Bridgecamp site to discuss the Riparian Management Zone (RMZ) adjacent to a stream running through the property. The parties agreed that forest practice rules prohibited harvesting within 200 feet of the river channel or within 50 feet of the stream. Thereafter, the DNR approved the application and Hancock retained Whalen Timber to harvest the timber.

¶4 SR 410 is a rural mountain highway surrounded by evergreen forests. The National Weather Service issued a high-wind watch for the area in which the accident occurred. Wind gusts of 75 m.p.h. (Buckley) and 57 m.p.h. (Cumberland) were recorded. Historically, trees adjoining SR 410 have unpredictably blown down across the highway. DOT closes a road once a tree has blown down to clear the highway.

¶5 Ruiz was driving westbound. After the accident, Trooper Mark Soper investigated and noted that the accident site had recently been logged on the downhill slope next to the eastbound lane but that a stand of healthy trees, approximately 100 feet in total width, had been left standing adjacent to the eastbound shoulder. The trooper noted that the tree segment that caused the accident could have come from several nearby standing trees that were broken off at the tops.

¶6 A stream flowed under the highway and through those trees downhill to the White River in the valley below the highway. The trees identified by the trooper were included in the RMZ under the terms of the Hancock application.

¶7 A few days after Ruiz's accident, DOT requested Hancock cut the trees near the stream and adjacent to the highway. Hancock responded that it was unable to do so because of state rules prohibiting timber harvesting in the RMZ. On December 22, 2004, for public safety reasons, representatives from Hancock, DOT, DFW, and DNR agencies met and agreed to cut trees at the accident site within 120 feet of the highway, including trees located in the RMZ.

¶8 Ruiz sued Hancock, White River Forests, Whalen Timber, and the State for damages. White River Forests defaulted, and Ruiz voluntarily dismissed Whalen Timber from the suit. The superior court granted the State's and Hancock's motions for summary judgment based on statutory immunity. Ruiz sought direct review in the Supreme Court, which transferred the appeal to this court. Ruiz asserts that immunity should not be available to the State and Hancock because they knowingly created a dangerous condition that proximately caused the injury. Ruiz also contends that Hancock is not a landowner under the statute.

## ANALYSIS

¶9 The Forest Practices Act of 1974 (FPA) is a statewide system of laws designed to manage and protect the state's

natural resources.[1] In adopting the FPA, the legislature recognized that "forest land resources are among the most valuable of all resources in the state."[2] One of the goals of the act was to create and maintain "a comprehensive statewide system of laws and forest practices rules which will achieve" the purposes of the act.[3] " 'Forest practice' means any activity conducted on or directly pertaining to forest land and relating to growing, harvesting, or processing timber."[4] "Forest land" is "all land which is capable of supporting a merchantable stand of timber and is not being actively used for a use which is incompatible with timber growing."[5]

¶10 Leaving riparian areas unharvested provides public benefits, including benefits to wildlife and water quality. RCW 76.09.330 provides:

> The legislature hereby finds and declares that riparian ecosystems on forest lands in addition to containing valuable timber resources, provide benefits for wildlife, fish, and water quality. The legislature further finds and declares that leaving riparian areas unharvested and leaving snags and green trees for large woody debris recruitment for streams and rivers provides public benefits including but not limited to benefits for threatened and endangered salmonids, other fish, amphibians, wildlife, and water quality enhancement. The legislature further finds and declares that leaving upland areas unharvested for wildlife and leaving snags and green trees for future snag recruitment provides benefits for wildlife. Forest landowners may be required to leave trees standing in riparian and upland areas to benefit public resources. It is recognized that these trees may blow down or fall into streams and that organic debris may be allowed to remain in streams. This is beneficial to riparian dependent and other wildlife species. *Further, it is recognized that trees may blow down, fall onto, or otherwise*

---

[1] Ch. 76.09 RCW.

[2] RCW 76.09.010(1).

[3] RCW 76.09.010(2).

[4] RCW 76.09.020(13).

[5] RCW 76.09.020(11).

*cause damage or injury to public improvements, private property, and persons. Notwithstanding any statutory provision, rule, or common law doctrine to the contrary, the landowner, the department, and the state of Washington shall not be held liable for any injury or damages resulting from these actions, including but not limited to wildfire, erosion, flooding, personal injury, property damage, damage to public improvements, and other injury or damages of any kind or character resulting from the trees being left.[6]*

¶11 Ruiz agrees that the immunity provision is clear but argues that the State and Hancock are prohibited from asserting that immunity because they created a dangerous condition by leaving exposed trees at the edge of a riparian zone. He argues in essence that because the RMZ was near a road, it was foreseeable that trees would fall resulting in damage and, thus, the State and Hancock should have considered this and waived any environmental regulations. While this argument has some attraction, particularly on the facts here that underscore a collision between the important policy of public safety and that of environmental protection, these public policy choices, however, are for the legislature, not this court.

¶12 The extent to which the state of Washington waives its sovereign immunity or retreats from that waiver is completely within the ken of the legislature.[7] Not only do we believe that the current language of the pertinent statute is completely clear with regard to the legislature's decision on that waiver, but the history of that portion of the statute makes it even more clear. Prior to 1999, former RCW 76.09.330[8] provided immunity against

any injury or damages resulting from these actions, including but not limited to wildfire, erosion, flooding, and other damages resulting from the trees being left.

---

[6] (Emphasis added.)

[7] RCW 4.92.090.

[8] Former RCW 76.09.330 (1998) (amended by Laws of 1999, 1st Spec. Sess., ch. 4 § 602, at 2314).

In 1999, the additional emphasized language was added:

> *Further, it is recognized that trees may blow down, fall onto, or otherwise cause damage or injury to public improvements, private property, and persons. Notwithstanding any statutory provision, rule, or common law doctrine to the contrary,* the landowner, the *department, and the state of Washington* shall not be held liable for any injury or damages, resulting from these actions, including but not limited to wildfire, erosion, flooding, *personal injury, property damage, damage to public improvements,* and other *injury or damages of any kind or character* resulting from trees being left.[9]

This more inclusive language clearly defeats Ruiz's argument that the common law rule of negligence should apply. This language also clearly reflects the legislature's balancing of the competing public policies. And, while legislative use of the phrase "[n]otwithstanding any statutory provision, rule, or common law doctrine to the contrary" can be criticized for its broad sweep without adequate notice or debate for all its potential implications, it does not leave this court with any room for debate over that very broad sweep.[10] It is clear that the State has asserted its immunity and extended that immunity to those required to obey its dictates in the area of forest practices.

¶13 Likewise, Ruiz's argument that the court should interpret the statute's immunity provision like the immunity provision in RCW 4.24.210, the recreational use statute, is also without merit. The recreational use statute grants immunity to landowners for recreational use for unintentional injuries. Unlike the FPA, the recreational use statute provides an express exemption from immunity for known, dangerous, artificial, and latent conditions for which warning signs are not posted.[11]

¶14 Ruiz next argues that the rules did not require the trees to be left in the riparian zone because the State

---

[9] RCW 76.09.330 (emphasis added).

[10] RCW 76.09.330.

[11] RCW 4.24.210(4).

later waived those riparian rules after the accident and authorized the removal of trees adjacent to SR 410. This argument is somewhat specious and certainly begs the question at hand. DNR administers and enforces the act by approving forest practices applications such as Hancock's.[12] Forest operators such as Hancock and land owners are required to submit forest practices applications to comply with the terms of the permits issued.[13] Hancock and state representatives met at the Bridgewater site to specifically determine which trees could be harvested pursuant to Hancock's application. The application process here clearly established a zone within which Hancock was prevented from harvesting timber. That zone is not disputed by the parties. The fact that the State later revised that zone because of safety considerations previously discounted or not considered does not "repeal" the prior requirements that Hancock and the State needed to meet to protect the riparian zone.

¶15 Finally, Ruiz's contention that Hancock is not immune from suit because he was not a "forest landowner" within the meaning of the statute is also without merit. The act clearly defines "forest landowner" in RCW 76.09.20(12):

"Forest landowner" means any person in actual control of forest land, whether such control is based either on legal or equitable title, or on any other interest entitling the holder to sell or otherwise dispose of any or all of the timber on such land in any manner. However, any lessee or other person in possession of forest land without legal or equitable title to such land shall be excluded from the definition of "forest landowner" unless such lessee or other person has the right to sell or otherwise dispose of any or all of the timber located on such forest land.

It is clear that Hancock was in actual control of the forest land and had the right to sell or otherwise dispose of the timber. The documents were all signed by Hancock and it

---

[12] RCW 76.09.050.

[13] RCW 76.09.060.

was Hancock who met with the state agencies regarding the Bridgecamp RMZ.

¶16 The trial court is affirmed.

SCHINDLER, C.J., and COX, J., concur.

Review denied at 169 Wn.2d 1012 (2010).