**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/WAreports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| PUBLIC UTILITY DISTRICT NO. 1 OF SNOHOMISH COUNTY, a Washington Municipal corporation; BARRY CHRISMAN and KERRY CHRISMAN, individually and as husband and wife, | No. 84166-1-I (consolidated with No. 84167-0-I) |
| Appellants, | DIVISION ONE |
| v. | PUBLISHED OPINION |
| STATE OF WASHINGTON, SIERRA PACIFIC INDUSTRIES DBA SIERRA PACIFIC INDUSTRIES, INC., a California corporation, PRECISION FORESTRY, INC., a Washington Corporation, JOHN DOE NOS. 1-10, and ABC CORPORATIONS 1-10, | |
| Respondents. | |

HAZELRIGG, A.C.J. — Barry Chrisman and his spouse, along with the Snohomish County Public Utility District No. 1, appeal from summary judgment dismissal of their respective claims against the State and other involved entities following a tragic tree-fall accident which left Chrisman with devastating injuries. Because there is a genuine issue of material fact, and because the respondents are not entitled to statutory immunity as a matter of law, dismissal was improper. We reverse and remand for further proceedings consistent with this opinion.

No. 84166-1-I/2

FACTS

In 2017, the State of Washington, through the Department of Natural Resources (DNR), auctioned timber harvesting rights for an area named "Lugnut" in Snohomish County. Olney Creek runs through this area; the creek is classified as a Type S Stream requiring a riparian management zone (RMZ) under WAC 222-30-021. An RMZ is an area near a stream, set aside by the DNR, where timber harvesting is limited or excluded so the trees may fall naturally for the benefit of the wetland environment. WAC 222-30-010. The DNR sectioned Lugnut into three units; Sierra Pacific Industries (SPI) purchased the timber rights to Unit 2. The RMZ surrounding Olney Creek, as designated by the DNR, is located outside of the sale area.

SPI contracted with Precision Forestry (Precision) to fell and process the timber in Unit 2, pursuant to the constraints set out in the timber sale agreement between the State and SPI. Precision began harvesting activities in mid-February 2018 and completed all cutting "up to the timber sale boundary tags" in the beginning of March 2018. On March 13, 2018, around 8:30 a.m., Barry Chrisman, an employee of the Snohomish County Public Utility District No. 1 (PUD), was driving a PUD vehicle on Sultan Basin Road in this area. The wind speeds were "extremely high" at the time and had been throughout the morning. An uprooted tree fell, striking the PUD car, and caused catastrophic injuries to Chrisman. The PUD filed a complaint against the State, SPI, and Precision (collectively, the respondents), seeking compensation for property damage and for payments it made for Chrisman's injuries through workers' compensation.

- 2 -

No. 84166-1-I/3

Chrisman and his spouse also sued the respondents, seeking recovery for personal injuries and loss of consortium.  The Snohomish County Superior Court consolidated the two cases.

The respondents all separately moved for summary judgment dismissal, arguing they were each immune from all claims under the Forest Practices Act of 1974 (FPA).[1]  Precision additionally argued dismissal of all claims against it was warranted because there was no issue of material fact as to the elements of negligence or gross negligence, strict liability was inapplicable, and the nuisance claims of both appellants were duplicative of their claims for negligence.  The parties offered a number of declarations in support of their respective positions on summary judgment.  The State submitted a declaration from John Moon, a forester with the DNR who assisted in planning the Lugnut sale.  The PUD responded with a declaration from Galen Wright, an expert in forestry and vegetation management, including riparian vegetation.  Chrisman filed a declaration from Michael Jackson, a forester and expert on forestry practices.  The court granted the respondents' motions for summary judgment and dismissed all of the claims based on statutory immunity.  Chrisman and the PUD (collectively, the appellants) moved for reconsideration, which the court denied.  Chrisman and the PUD timely appealed.

ANALYSIS

This court reviews a trial court's decision on summary judgment de novo, engaging in the same inquiry as the trial court.  <u>Davies v. MultiCare Health Sys.</u>,

___

[1] LAWS OF 1974, 3rd Ex. Sess., c 137, § 1.

199 Wn.2d 608, 616, 510 P.3d 346 (2022). Viewing the evidence in the light most favorable to the nonmoving party, summary judgment is proper "when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Dobson v. Archibald, 1 Wn.3d 102, 107, 523 P.3d 1190 (2023). The moving party bears the initial burden to show there is no issue of material fact; if it successfully does so, the burden shifts to the nonmoving party to demonstrate a material question of fact. Atherton Condo. Apt.-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co., 115 Wn.2d 506, 516, 799 P.2d 250 (1990). A genuine issue of material fact exists when reasonable minds could reach different conclusions regarding evidence upon which the outcome of the litigation depends. Haley v. Amazon.com Servs., LLC, 25 Wn. App. 2d 207, 217, 522 P.3d 80 (2022). "On summary judgment, the trial court may not weigh the evidence, assess credibility, consider the likelihood that the evidence will prove true, or otherwise resolve issues of material fact." Id.

This court interprets the meaning of a statute de novo. Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). Our aim is to carry out the intention of the legislature, and "if the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." Id. at 9-10. We first look to the text of the statute and context of the provision. Dobson, 1 Wn.3d at 107. Where a term is undefined by statute, we may rely on a dictionary definition to discern the plain meaning of the term. Nissen v. Pierce County, 183 Wn.2d 863, 881, 357 P.3d 45 (2015). If there is more than one reasonable interpretation, we turn to the canons of statutory

- 4 -

No. 84166-1-I/5

construction, legislative history, and other case law to determine the legislative intent. Cockle v. Dep't of Lab. & Indus., 142 Wn.2d 801, 808, 16 P.3d 583 (2001).

"Statutes in derogation of the common law are construed strictly to apply only to those who fall within the terms of the statute." In re Gen. Receivership of EM Prop. Holdings, LLC, 199 Wn.2d 725, 734, 511 P.3d 1258 (2022).[2] "Strict construction is simply a requirement that, where two interpretations are equally consistent with legislative intent, the court opts for the narrower interpretation of the statute." Est. of Bunch v. McGraw Residential Ctr., 174 Wn.2d 425, 432-33, 275 P.3d 1119 (2012).

I.      Immunity Under Forest Practices Act

The appellants contend the trial court erred by applying an overbroad interpretation of RCW 76.09.330 in holding that the immunity afforded by the FPA applies to any injuries caused by trees that are left, regardless of the allegedly wrongful act that constitutes a breach. RCW 76.09.330 provides:

> The legislature hereby finds and declares that riparian ecosystems on forestlands in addition to containing valuable timber resources, provide benefits for wildlife, fish, and water quality. The legislature further finds and declares that leaving riparian areas unharvested and leaving snags and green trees for large woody debris recruitment for streams and rivers provides public benefits including but not limited to benefits for threatened and endangered salmonids, other fish, amphibians, wildlife, and water quality enhancement. The legislature further finds and declares that

---

[2] SPI argues that RCW 76.09.330 is not in derogation of the common law and, even if it is, the court is not required to construe the statute narrowly because the meaning is plain on its face. The relevant statute provides for immunity "[n]otwithstanding any statutory provision, rule, or common law doctrine to the contrary." RCW 76.09.330.

"Statutory grants of immunity in derogation of the common law are strictly construed." Michaels v. CH2M Hill, Inc., 171 Wn.2d 587, 600, 257 P.3d 532 (2011). Accordingly, the statute is construed strictly to the extent the language is not plain on its face.

leaving upland areas unharvested for wildlife and leaving snags and green trees for future snag recruitment provides benefits for wildlife. Forestland owners may be required to leave trees standing in riparian and upland areas to benefit public resources. It is recognized that these trees may blow down or fall into streams and that organic debris may be allowed to remain in streams. This is beneficial to riparian dependent and other wildlife species. Further, it is recognized that trees may blow down, fall onto, or otherwise cause damage or injury to public improvements, private property, and persons. Notwithstanding any statutory provision, rule, or common law doctrine to the contrary, the landowner, the department, and the state of Washington shall not be held liable for any injury or damages resulting from these actions, including but not limited to wildfire, erosion, flooding, personal injury, property damage, damage to public improvements, and other injury or damages of any kind or character resulting from the trees being left.

A.      Forestland Owner

Under the plain language of the statute, only the State of Washington, the DNR, and the relevant landowner are entitled to immunity under the FPA.  The statute articulates in part that "[f]orestland owners may be required to leave trees standing in riparian and upland areas" and that "the landowner . . . shall not be held liable for any injury or damages resulting from these actions."  RCW 76.09.330.  While the statute operates to immunize landowners who leave riparian trees, as required, for the benefit of the ecological system, that immunity is limited to the State, the DNR, and the forestland owner.  Id.  "Forestland owner" is defined by statute as "any person in actual control of forestland, whether such control is based either on legal or equitable title, or on any other interest entitling the holder to sell or otherwise dispose of any or all of the timber on such land in any manner."  RCW 76.09.020(16).  Precision concedes it did not have the right to harvest in the RMZ, but argues it had the right to dispose of the timber and slash from Unit 2, giving it partial control and fulfilling the statutory

- 6 -

No. 84166-1-I/7

definition of forestland owner.  SPI asserts that it had the right to sell or dispose of the timber in Unit 2 under the terms of the Bill of Sale with the State and, as such, was a forestland owner entitled to statutory immunity.

Under the Bill of Sale, SPI (and Precision, by extension through the Logging Agreement) had the "right to harvest and remove forest products from the timber sale area."  The Bill of Sale defined the "Contract Area" as:

> All timber bounded by white timber sale boundary tags, adjacent young stands, the Sultan Basin Road and the SP-ML and SP-02 roads except cedar salvage (cedar snags, preexisting dead and down cedar trees and cedar logs), trees marked with blue paint on the bole and root collar, and forest products tagged out by yellow leave tree area tags in Unit #2.

The Timber Sale Map reveals sale boundary tags along the RMZ near Sultan Basin Road and establishes that the RMZ is not part of the sale area.  In its brief, SPI admits that "[t]he only trees adjacent to Sultan Basin Road on March 13, 2018, near the accident to the south, were standing trees within the RMZ and outside the timber sale area."  (Emphasis added.)  The express terms of the Timber Sale Agreement exclude SPI and Precision from the RMZ.  Consequently, they have no control over that zone and, thus, are not covered by the FPA.  Based on the contractual language, SPI and Precision had no right to harvest or remove forest products from the RMZ and, therefore, are not forestland owners of that area under the statutory definition.  Accordingly, they are not entitled to statutory immunity under the FPA, as to these claims, based on the plain language of the contract and the statute.

Precision alternatively contends immunity applies regardless of whether it had the right to harvest trees in the RMZ under Ruiz v. State.  154 Wn. App. 454,

- 7 -

No. 84166-1-I/8

225 P.3d 458 (2010). However, the appellant in Ruiz argued that the respondent was not a landowner within the meaning of the FPA because it was merely a management company for the landowner, not because it did not have possession or control of the area where the tree was left. Br. of Appellant at 28, Ruiz v. State, 154 Wn. App. 454, 225 P.3d 458 (2010), No. 63783-6-I.[3] This is distinct from the appellants' argument here, where they contend Precision and SPI are not forestland owners because they have no control or possession of the RMZ. As such, Ruiz is distinguishable and does not control; we instead look to the plain language of the statute.

Precision and SPI are not forestland owners required to leave trees standing in riparian areas—they were not involved in the decision regarding which trees to leave and which to harvest, and they had no control or possession outside of the timber sale area under the terms of the contract, independent of the DNR's reasoning for excluding the trees from the timber sale. Because Precision and SPI do not meet the statutory definition of "forestland owner," neither is entitled to statutory immunity as a matter of law. The trial court erred in dismissing the appellants' claims against those respondents under the Forest Practices Act.

B.    Immunized Acts

In the original 1987 amendment, RCW 76.09.330 immunized landowners from "damages resulting from the leave trees falling from natural causes in riparian areas." LAWS OF 1987, ch. 97, § 7. In 1992, the legislature removed this

---

[3] https://www.courts.wa.gov/content/Briefs/A01/637835%20appellants.pdf.

language and amended the statute to read, "It is recognized that these trees may blow down or fall into streams . . . The landowner shall not be held liable for <u>any injury</u> or damages resulting from <u>these actions, including but not limited to wildfire, erosion, flooding, and other damages resulting from the trees being left</u>." LAWS OF 1992, ch. 52, § 5. (emphasis added to amended portion). In 1999, the legislature again amended the statute, adding: "it is recognized that trees may blow down, fall onto, or otherwise cause damage or injury to public improvements, private property, and persons. Notwithstanding any statutory provision, rule, or common law doctrine to the contrary," the applicable parties are immune from liability for injury or damages. LAWS OF 1999, 1st Spec. Sess., ch. 4, § 602. The 1999 amendments also added to the injuries listed, providing immunity for "personal injury, property damage, damage to public improvement, and other injury or damages of any kind of character" and expressly added the DNR and State to the list of parties or entities not liable for damages arising from these actions. Id.

These amendments reflect the clear aim of the legislature to protect entities who are required to leave riparian trees standing to protect valuable ecological systems, despite the risk of damage. While these legislative amendments expanded the provision of immunity, the legislature expanded only the acknowledged harms and protected parties, not the protected acts. In each iteration of the statute, only the act of leaving a tree, and the damage resulting therefrom, is shielded. The plain language of the statute is unambiguous and protects only "these actions:" leaving a riparian tree as required.

Under this plain language, SPI and Precision are not entitled to immunity as a matter of law. As Precision admits, neither it nor SPI had any authority to determine the RMZ or decide what trees would be cut and what trees would be left standing, regardless of the DNR's reasoning for such designation. Indeed, the area was already marked and the parameters of the RMZ set at the time the Bill of Sale was signed. Because these entities did not make the decision to leave the injury-causing tree standing, there is no act by them subject to immunity under the statute. SPI and Precision are not shielded from liability under RCW 76.09.330 as a matter of law because they are not forestland owners and because they had no part in deciding what trees would be left.

In contrast, the State (through the DNR) designated the RMZ, decided what trees would be harvested, and determined what trees would be left. Again, under the plain language of RCW 76.09.330, only this act of leaving a tree is immunized. While the State decided the injury-causing tree was required to be left, the State also elected to permit a successful bidder to strip Unit 2 up to the boundary of the RMZ despite the known risk of forest-edge effects. The choice to permit SPI and Precision to log all trees in Unit 2, and to designate an RMZ without a wind buffer,[4] rendered the RMZ trees vulnerable to forest-edge effects. These acts are distinct from the decision to leave the RMZ trees standing, and,

---

[4] Despite Precision's statement to the contrary at oral argument before this court, the record reflects that no wind buffer was included in the RMZ at issue here, though RMZs do generally include a wind buffer. Wash. Ct. of Appeals oral argument, Pub. Util. Dist. No. 1 of Snohomish County v. State, No. 84166-1-I (July 18, 2023), at 16 min., 00 sec., video recording by TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2023071123.

Counsel for the PUD countered this assertion in rebuttal argument by quoting from the Forest Practices Application/Notification Addendum for the Lugnut Sale prepared by the DNR that clearly states, "'no wind buffers were applied' to Olney Creek's 162-foot RMZ." Wash. Ct. of Appeals oral argument, supra, at 21 min., 25 sec.

under the plain language of the statute, are not immunized. For these reasons, the State is not entitled to immunity under RCW 76.09.330 as a matter of law on these claims.

### C. Designation of RMZ

The appellants also argue there is an issue of material fact as to whether the respondents were required to leave the injury-causing tree. They contend immunity under RCW 76.09.330 only applies if the forestland owner is required to leave the injury-causing tree standing. The appellants concede the tree that fell on Chrisman was within the State-designated RMZ, but they assert that the RMZ was erroneously measured and therefore the respondents were not legally required to leave the tree. As discussed previously, Precision and SPI were required to leave all trees designated by the State as outside of the Timber Sale Area and had no authority to determine the RMZ. See Section I.A, supra.

The State responds in its brief that the propriety of RMZ designations may only be challenged through the administrative process under the Administrative Procedure Act (APA)[5] and that the RMZ was accurately designated, or alternatively, that immunity applies to the DNR's allotment of the RMZ regardless of whether the classification is accurate.

### i. Application of Administrative Procedure Act

The respondents contend the appellants can only challenge the RMZ specification through the administrative process under the APA, not through the present civil suit. The appellants respond that this court may choose to not reach

---

[5] Ch. 34.05 RCW.

No. 84166-1-I/12

this argument under the Rules of Appellate Procedure, or alternatively, that the APA explicitly makes an exception for personal injury claims from the limitations on judicial review.

Under RAP 9.12, we "will only consider evidence and issues called to the attention of the trial court." Here, the trial court explained in a supplemental letter decision that, in making its summary judgment ruling, it did not rely upon the APA argument advanced by the respondents in their reply. In the court's order granting summary judgment, it noted it had considered the reply memoranda by Precision in support of the respondents' motions for summary judgment without any limitations identified. However, this court may affirm a summary judgment dismissal on any ground supported by the record. Port of Anacortes v. Frontier Indus., Inc., 9 Wn. App. 2d 885, 892, 447 P.3d 215 (2019); see also Wolf v. State, 24 Wn. App. 2d 290, 303, n.7, 519 P.3d 608 (2022) (reaching merits of an issue raised in a reply supporting a motion for summary judgment).

The APA is the "exclusive means of judicial review of agency action" subject to three exceptions. RCW 34.05.510. The first exception is where "the sole issue is a claim for money damages or compensation and the agency whose action is at issue does not have statutory authority to determine the claim." RCW 34.05.510(1). None of the respondents addressed this statutory exception before the trial court or this court. The appellants brought a claim for money damages; the parties cite no legal precedent providing the DNR authority to

- 12 -

determine this claim.[6]  As the appellants note, a holding that the parties had to challenge the RMZ through the administrative process, two years before Chrisman was injured, would create absurd results.

Under RCW 34.05.510(1), the appellants may challenge the designation of the RMZ through this suit, rather than through an administrative proceeding. We determine that judicial review of the propriety of the RMZ designation, based on the claims presented, is proper.

ii.      Immunity for Incorrectly-Drawn RMZ

The State argues immunity attaches for any damages caused by an RMZ-designated tree regardless of whether the DNR has measured the zone correctly. It cites no authority for this contention, nor does it engage in an analysis of the plain language of the statute.

RCW 76.09.330 states in relevant part:

> Forestland owners may be required to leave trees standing in riparian and upland areas to benefit public resources . . . the state of Washington shall not be held liable for any injury or damages resulting from these actions, including but not limited to . . . injury or damages of any kind or character resulting from the trees being left.

"Required" is not defined by the statute.  Where a term is not defined by the legislature, this court may look to the context of the statute and dictionary definitions to determine the plain meaning of the word.  Samish Indian Nation v. Dep't of Licensing, 14 Wn. App. 2d 437, 442, 471 P.3d 261 (2020).  The dictionary definition of "require" includes "to demand as necessary or essential

---

[6] "Where no authorities are cited in support of a proposition, we are not required to search out authorities, but may assume that counsel, after diligent search, has found none." Helmbreck v. McPhee, 15 Wn. App. 2d 41, 57, 476 P.3d 589 (2020).

No. 84166-1-I/14

(as on general principles or in order to comply with or satisfy some regulation)."
Webster's Third New International Dictionary 1929 (2002).

Under the plain language of RCW 76.09.330, immunity attaches only where a forestland owner must leave a tree standing in order to comply with the relevant regulations. This interpretation is consistent with the general rule that this court strictly construes immunity in derogation of the common law. See Michaels, 171 Wn.2d at 600 ("Statutory grants of immunity in derogation of the common law are strictly construed."). Under the plain language of the statute, immunity only attaches if the RMZ is properly drawn.

### iii.    Genuine Issue of Material Fact as to Designation of RMZ

The appellants aver there is a question of material fact as to whether the tree was properly located in an RMZ. They argue Olney Creek is classified as a Class III stream that requires a 140-foot RMZ under WAC 222-16-010, while the RMZ designated by the DNR is 162 feet. Alternatively, the appellants argue that there is an issue of material fact as to whether a Channel Migration Zone (CMZ)[7] exists in the area, modifying the correct size of the RMZ. The State responds that 162 feet is the required width under the Habitat Conservation Plan (HCP) and aligns with the Incidental Take Permit. DNR expert Moon declared that the RMZ width of 162 feet "was determined based on HCP rules" and reflected the "required width under the HCP standard." While the appellants repeatedly rely on the standard for RMZ width in WAC 222-16-010, they did not address the

---

[7] A Channel Migration Zone is "the area where the active channel of a stream is prone to move and this results in a potential near-term loss of riparian function and associated habitat adjacent to the stream." WAC 222-16-010. Near-term is "the time scale required to grow a mature forest." Id.

- 14 -

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

width required under the HCP in the litigation at the trial court or in briefing on appeal. PUD expert Wright opined that only the first 140 feet of the RMZ was required under the FPA, but did not address the HCP requirements. Both appellants fail to address the expert opinion that the RMZ was measured not only under the FPA and WAC 222-16-010, but also under the HCP standard. The State established through Moon's uncontroverted expert testimony that the RMZ was the width required by the HCP.

The appellants alternatively argue there is a question of material fact as to whether a CMZ exists in the area, based on the opinions of their respective experts. PUD expert Wright opined that the tree that struck Chrisman was located 227 feet from the ordinary high-water mark of Olney Creek; outside of the 162-foot RMZ. He declared that there is "a topological break at Olney Creek," preventing a CMZ. Chrisman's expert Jackson adduced that there is no CMZ based on "the physical features at the site." He noted that on the top of the Olney Creek bank, there is a tree cut in the late 1800s, indicating that the bank has been in place since at least that time. However, DNR expert Moon's opinion was that there is a CMZ present and that the CMZ was delineated based on the Forest Practices Board Manual. But, he did not describe what that process is or what guidance the manual provides. An expert's opinion "'cannot simply be a conclusion or based on an assumption if it is to survive summary judgment.'" Strauss v. Premera Blue Cross, 194 Wn.2d 296, 301, 449 P.3d 640 (2019) (quoting Volk v. DeMeerleer, 187 Wn.2d 241, 277, 386 P.3d 254 (2016)).

Viewing all facts in the light most favorable to the appellants, as we must, there is a genuine issue of material fact as to whether a CMZ exists in Olney Creek and, by extension, whether the tree that struck Chrisman was outside of the 162-foot RMZ. Even if the 162-foot RMZ is proper under the HCP, the appellants have raised an issue of material fact as to whether the tree is outside that zone based on the existence (or nonexistence) of a CMZ. We have decided DNR expert Moon's declaration reflects a mere conclusion, thus, without more, it is insufficient to demonstrate there is no genuine issue of material fact on this question. As such, summary judgment was improper as to the State.

II.    Conclusion

Based on the plain language of the FPA and our summary judgment standard, dismissal of the appellants' claims was improper. SPI and Precision are not entitled to statutory immunity under the FPA as a matter of law because they do not meet the statutory definition of "forestland owner," nor were they involved in the only act protected by the statute. The State is not entitled to statutory immunity because its act of stripping the wind-barrier is not protected by the FPA. Further, there is a genuine issue of material fact as to whether the RMZ was correctly designated and, by extension, whether FPA immunity applies to the State on that alternate basis. For these reasons, summary judgment dismissal of the negligence claims under the FPA for all respondents was improper and we reverse.[8]

---

[8] Because the trial court erred in granting summary judgment, its denial of the motion for reconsideration was an error of law and therefore an abuse of discretion. See Council House, Inc. v. Hawk, 136 Wn. App. 153, 159, 147 P.3d 1305 (2006).

We decline to reach the other bases for summary judgment raised by Precision.  Precision moved for dismissal of Chrisman and PUD's claims on alternative grounds, arguing the appellants' negligence claims should be dismissed because it did not owe any duty to Chrisman, that the appellants' nuisance claims were duplicative of its negligence claims, that there was no genuine issue of material fact as to the slight care element of gross negligence, and that Chrisman's claim for strict liability was inapplicable to Precision.  The trial court did not reach the merits of these claims as it determined they were mooted by its ruling on statutory immunity.  We likewise decline Precision's invitation to analyze the merits of these issues.

We reverse the summary judgment dismissal and remand for further proceedings consistent with this opinion.

_____

WE CONCUR:

_____          _____