FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
JANUARY 16, 2025

*Stone, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
AUGUST XX, 2024

SARAH R. PENDLETON
ACTING SUPREME COURT CLERK

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

PUBLIC UTILITY DISTRICT NO. 1 OF
SNOHOMISH COUNTY, BARRY
CHRISMAN, and KERRY
CHRISMAN,

　　　　　　　　　Respondents,

　　v.

STATE OF WASHINGTON, SIERRA
PACIFIC INDUSTRIES DBA SIERRA
PACIFIC INDUSTRIES, INC., and
PRECISION FORESTRY, INC.,

　　　　　　　　　Petitioners.

No. 102586-6

En Banc

Filed: January 16, 2025

GONZÁLEZ, J.—Barry Chrisman was seriously injured when a tree blew down on his work vehicle. The forestland around the accident had been recently logged, except for a band of trees in a riparian management zone (RMZ). RMZs are buffers of trees left standing on either side of a river or creek to benefit wildlife and water quality. The Forest Practices Act of 1974 immunizes forestland owners from liability when a tree required to be left standing in an RMZ falls and causes damage or injury. RCW 76.09.330. The tree that injured Chrisman was in an RMZ.

Chrisman and his employer sued the State, the lumber company Sierra Pacific Industries, and the logging company Precision Forestry Inc., for negligence. The defendants

contend they are immune under RCW 76.09.330. The plaintiffs contend that the defendants are not forestland owners and, therefore, cannot claim immunity under the statute. The plaintiffs also contend defendants are not immune on the theory that the RMZ was improperly drawn, and thus, the tree that struck Chrisman was not required to be left standing.

We hold that the defendants are immune in this case under the plain language of the statute. RCW 76.09.330 provides broad immunity when a tree required to be left standing blows down and causes injury or property damage. This immunity applies not only to the State but also to forestland owners, who must comply with the State's designation of the RMZ. The defendants in this case are forestland owners as defined by the act because they were in actual control of the forestland and had a right to sell or otherwise dispose of the timber on the land. We also hold that immunity under the Forest Practices Act is not dependent on the accuracy of a final RMZ designation.

FACTS

The State of Washington manages approximately 2.4 million acres of forestland, which it periodically harvests for public benefit. *Forest and Trust Land*, WASH. ST. DEP'T OF NAT. RES., https://www.dnr.wa.gov/managed-lands/forest-and-trust-lands [https://perma.cc/FVL4-BW9F]. In 2016, the Washington Department of Natural Resources (DNR) applied to harvest the state-owned Lugnut timber area in Snohomish County. Because the forestlands in question are state-owned, DNR had two different roles in this exchange. One branch of DNR designed the timber map and applied for the permit, while a separate branch reviewed the application and approved the permit. The Lugnut

timber sale map developed by DNR designates certain areas as RMZs. RMZs are buffers of trees left standing on either side of a river or creek to benefit wildlife and water quality. RCW 76.09.330; WAC 222-16-010. When DNR approves a permit to harvest timber, the right to harvest RMZ trees or trees in other protected areas is not included. DNR approved the map of the Lugnut timber sale area. No member of the public commented on the Lugnut timber sale application, and the decision became final in 2016. No one timely challenged the final decision.

Sierra Pacific Industries successfully bid for the right to harvest the timber in one section of the Lugnut area: Lugnut Unit 2. The Lugnut Unit 2 timber area includes the Olney Creek RMZ. Sierra contracted Precision Forestry to log the area. The timber sale contract required Precision to abide by the approved forest practice application, including the prohibition on harvesting in the RMZ. Precision began harvesting operations in February 2018.

March 13, 2018, was an extremely windy day. That day, Chrisman drove a Public Utility District No. 1 of Snohomish County (PUD) vehicle on Sultan Basin Road, which passes through the Olney Creek RMZ. Precision had clear-cut the timber in the area one week prior and left the RMZ trees standing. This left a roughly 100-foot-wide strip of timber standing next to Sultan Basin Road. As Chrisman passed through the RMZ, a tree fell over the road, smashing the car and seriously injuring him. Precision employees on the scene called 911, and Chrisman was taken to the hospital. Counsel states that Chrisman was in inpatient care for nearly four months and will have disabilities for the rest of his life.

PUD sued the State, Sierra, and Precision, alleging negligence, gross negligence, and

3

nuisance. PUD sought reimbursement for workers' compensation benefits it paid to Chrisman and damage to its property. Chrisman and his wife filed a separate lawsuit against the same defendants shortly after, alleging negligence, gross negligence, corporate negligence, strict liability, and nuisance. The trial court consolidated the suits.

The defendants moved for summary judgment dismissal, which the trial court granted. The court held that the immunity statute applied to all defendants because they were forestland owners as defined by the statute and were required to leave the RMZ trees. The Chrismans and PUD (plaintiffs) appealed.

The Court of Appeals reversed. *Pub. Util. Dist. No. 1 of Snohomish County v. State*, 28 Wn. App. 2d 124, 534 P.3d 1210 (2023). It held that Sierra and Precision were not forestland owners because they did not have the right to harvest RMZ trees, and therefore, the statute's grant of immunity did not apply to them. *Id.* at 130-32. It also held that only entities with the authority to determine the parameters of an RMZ are entitled to immunity. *Id.* at 132-34. However, even though the State was potentially entitled to immunity for its RMZ designation, the court found that the plaintiffs could sue the State for the separate decision to allow Sierra and Precision to clear-cut the trees next to the RMZ. *Id.* Finally, the Court of Appeals held that immunity attaches only if an RMZ is properly drawn, and it found a genuine issue of material fact as to whether the RMZ was properly drawn in this case. *Id.* at 136-38.

We accepted review. Washington State Association for Justice Foundation filed an amicus brief, as did Washington Forest Protection Association, in coalition with a variety of Washington landowner groups.

4

ANALYSIS

We review motions for summary judgment de novo. *Davies v. MultiCare Health Sys.*, 199 Wn.2d 608, 616, 510 P.3d 346 (2022) (citing *DeWater v. State*, 130 Wn.2d 128, 133, 921 P.2d 1059 (1996)). This case asks us to interpret RCW 76.09.330, the Forest Practices Act immunity statute. The goal of statutory construction is to interpret and carry out the legislature's intent. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). If the meaning of a statute is plain on its face, our analysis stops there. *State v. Gray*, 174 Wn.2d 920, 927, 280 P.3d 1110 (2012). This court considers the statutory scheme as a whole and related statutes when determining plain meaning. *Campbell & Gwinn*, 146 Wn.2d at 11-12.

1. FOREST PRACTICES ACT IMMUNITY

The legislature enacted the Forest Practices Act with the express purpose of creating comprehensive forest practices regulations that encourage timber growth and harvesting while also protecting public resources. LAWS OF 1974, 1st Ex. Sess., ch. 137, § 1 (codified as amended at RCW 76.09.010). Later, the legislature gave landowners immunity when trees that were required to be left standing in riparian areas fall or otherwise cause damage. LAWS OF 1987, ch. 95, § 7 (codified as amended at RCW 76.09.330). The current version of the immunity statute reads:

> The legislature hereby finds and declares that riparian ecosystems on forestlands in addition to containing valuable timber resources, provide benefits for wildlife, fish, and water quality. The legislature further finds and declares that leaving riparian areas unharvested and leaving snags and green trees for large woody debris recruitment for streams and rivers provides public benefits including but not limited to benefits for threatened and endangered

salmonids, other fish, amphibians, wildlife, and water quality enhancement. The legislature further finds and declares that leaving upland areas unharvested for wildlife and leaving snags and green trees for future snag recruitment provides benefits for wildlife. *Forestland owners may be required to leave trees standing in riparian and upland areas to benefit public resources. It is recognized that these trees may blow down or fall into streams and that organic debris may be allowed to remain in streams.* This is beneficial to riparian dependent and other wildlife species. *Further, it is recognized that trees may blow down, fall onto, or otherwise cause damage or injury to public improvements, private property, and persons. Notwithstanding any statutory provision, rule, or common law doctrine to the contrary, the landowner, the department, and the state of Washington shall not be held liable for any injury or damages resulting from these actions, including but not limited to wildfire, erosion, flooding, personal injury, property damage, damage to public improvements, and other injury or damages of any kind or character resulting from the trees being left.*

RCW 76.09.330 (emphasis added). In short, the legislature enacted a policy in favor of leaving riparian areas unharvested to benefit biodiversity and water quality. It intended for falling trees to enhance habitat, and it anticipated that leaving these trees could cause personal injury or property damage. The legislature created broad immunity "[n]otwithstanding any statutory provision, rule, or common law doctrine to the contrary." *Id.* The statute immunizes the landowner, the department, and the State of Washington from liability for a broad range of possible hazards.

This immunity statute is plain and unambiguous. The statute protects forestland owners from liability when a tree required to be left standing in a riparian area falls and causes injury or damage to property. This is in harmony with the larger purposes of the act, which are to encourage timber growth and harvesting while also protecting public resources.

This interpretation is consistent with the only prior case interpreting the Forest Practices Act immunity statute: *Ruiz v. State*, 154 Wn. App. 454, 225 P.3d 458 (2010). The facts of *Ruiz* are very similar to the case before us. A man was injured when a tree fell on his vehicle as he drove through the RMZ of a recently logged area. *Id.* at 456-57. The Court of Appeals concluded that the statute's grant of immunity was "completely clear" and that it had a "very broad sweep," covering both the State and "those required to obey its dictates in the area of forest practices." *Id.* at 459-60. Although the legislature has amended the immunity statute twice since 1987, it did not do so in response to *Ruiz*. This suggests that the legislature acquiesced to the Court of Appeals' interpretation of the immunity statute. *See State v. Otton*, 185 Wn.2d 673, 685-86, 374 P.3d 1108 (2016) (defining legislative acquiescence (quoting *City of Federal Way v. Koenig*, 167 Wn.2d 341, 348, 217 P.3d 1172 (2009))).

Plaintiffs argue that the statute grants immunity in derogation of the common law and therefore must be strictly construed. Under strict construction, ambiguities in a statute are resolved in favor of a narrow, restrictive construction. *Pac. Nw. Ann. Conf. of United Methodist Church v. Walla Walla County*, 82 Wn.2d 138, 141, 508 P.2d 1361 (1973). In this case, the statute is unambiguous. Therefore, regardless of whether we apply strict, liberal, or normal construction, the analysis is the same.

We conclude that the statute's plain language immunizes the State and forestland owners when a tree required to be left standing in an RMZ falls and causes injury or damage. Accordingly, we must consider whether Precision and Sierra are forestland owners under the statute. We conclude that they are.

"Forestland owner" is defined broadly in Title 76 RCW as

> *any person in actual control of forestland, whether such control is based either on legal or equitable title, or on any other interest entitling the holder to sell or otherwise dispose of any or all of the timber on such land in any manner.* However, any lessee or other person in possession of forestland without legal or equitable title to such land shall be excluded from the definition of "forestland owner" unless such lessee or other person has the right to sell or otherwise dispose of any or all of the timber located on such forestland.

RCW 76.09.020(16) (emphasis added). This definition extends to people who do not have title to the land and specifically includes those who have an interest in the timber. The definition hinges on "actual control." A person has "actual control" of land if (among other things) they have an interest entitling them to dispose of any timber on that land. Here, Sierra and Precision are both forestland owners under the statute even though neither party owned the land. Sierra had a contractual right to harvest and sell the timber in the Lugnut Unit 2 area, and Precision, as Sierra's agent, had the same contractual right to sell or otherwise dispose of the timber. The defendants, therefore, had actual control of the land and fit squarely within the definition of forestland owners under the statute.

Plaintiffs argue that Sierra and Precision are not forestland owners because they did not have the right to harvest the RMZ trees, only trees on the land adjacent to the RMZ. It is true that neither Sierra nor Precision had the right to fell RMZ trees. However, being in actual control of a unit of forestland not only includes the right to harvest timber but also any obligation to leave timber standing.

Requiring that defendants have the right to cut RMZ trees to be considered forestland owners would gut the immunity statute because *no one* has the right to harvest

8

in an RMZ. *See* RCW 76.09.170; *Johnson Forestry Contracting, Inc. v. Dep't of Nat. Res.*, 131 Wn. App. 13, 16-18, 126 P.3d 45 (2005) (forestry company fined for cutting timber within an RMZ). Rather than exclude defendants from immunity, a requirement to leave trees standing is one of the *conditions* of immunity. To claim immunity, forestland owners must be required to leave trees standing. RCW 76.09.330 ("Forestland owners may be required to leave trees standing."). Approving timber sale maps that delineate RMZs and other protected areas is the mechanism by which the State requires forestland owners to leave these trees standing.

Finally, a person is a forestland owner when they have the right to dispose of *any* of the timber in a unit of forestland. Defendants undoubtedly had that right. Sierra and Precision are forestland owners of the Lugnut Unit 2 area even though they do not have the right to harvest RMZ trees.

The plain language of the statute immunizes forestland owners from suit when they are required to leave trees standing for environmental benefit and those trees are blown down, causing property damage or personal injury. Because that is precisely what happened in this case, the State, Sierra, and Precision are immune from suit.[1]

---

[1] The parties disagree about the scope of immunity provided by the statute. The State argues that the statute immunizes *any* injury caused by left RMZ trees. Plaintiffs counter that a too-broad reading of the statute could lead to a lack of liability in situations beyond what the legislature intended. For example, they contend, under the State's approach, if a logger were to improperly secure equipment that rolls downhill and topples an RMZ tree, they may be immune from suit merely because the tree that fell was in an RMZ. While this is an interesting hypothetical, it is not an issue raised by this case and we leave it for another day.

Plaintiffs also argue that defendants are not immune under the statute because the statute immunizes only the act of leaving trees standing. Plaintiffs contend that the defendants are liable for a *separate* act: cutting the trees adjacent to the RMZ, which made the RMZ trees more vulnerable to windthrow. They contend that defendants are liable for not leaving more trees to act as a wind buffer for the RMZ trees.

However, the defendants had no duty to protect RMZ trees from windthrow. The legislature anticipated that trees left in an RMZ would be vulnerable to being blown down and stated that these blown-down trees produce environmental benefits. Therefore, the statute immunizes forestland owners who are required to leave the trees standing. Regardless of whether we characterize defendants' actions as leaving RMZ trees or cutting adjacent trees, they were required to leave the trees in the RMZ standing. Defendants cannot be held liable for injury or property damage that resulted when the RMZ trees they were prohibited from harvesting fell.

Further, plaintiffs fail to provide this court with any workable rule that forestland owners can follow going forward. At various points in their briefing, plaintiffs argue that defendants left too many trees standing per the regulations and that defendants left too few trees standing where there should have been a wind buffer. In addition to resolving disputes between parties, the courts should seek to provide clear guidance on what the law is. Plaintiffs' interpretation of the law does not make clear how forestland owners can avoid liability going forward. In addition to being contrary to legislative intent, adopting plaintiffs' interpretation would lead to uncertainty among forest practitioners about how to comply with the law.

Instead, we hold that forestland owners are immune from suit where, as here, the State required them to leave trees standing for environmental benefit, those trees blew down in a windstorm, and personal injury and property damage occurred.

2. PROPRIETY OF THE RIPARIAN MANAGEMENT ZONE

Finally, plaintiffs argue that the court improperly granted summary judgment because there was an issue of material fact about whether the RMZ was properly drawn. This argument hinges on the word "require." Plaintiffs argue that if an RMZ was improperly designated, the forestland owners were not truly *required* to leave those trees standing. To challenge the propriety of the RMZ, the Chrismans and PUD each provided reports by expert witnesses who testified that the RMZ was improperly drawn.

But the immunity statute does not say that an RMZ designation must be properly drawn for immunity to apply. Instead, immunity applies when forestland owners are required to leave the trees standing. Regulations specify where to designate an RMZ and how wide to make it, but DNR is charged with administering the forest practices rules and forestland owners must follow DNR's interpretations. RCW 76.09.040(1)(c); WAC 222-46-015; *see* WAC 222-30-021. After a landowner submits a forest practices application, DNR reviews it for compliance with the regulations. RCW 76.09.050. Once the RMZ becomes final, forestland owners are required to leave those trees standing regardless of whether the designation is correct.

Plaintiffs argue that this interpretation gives the State too much power to determine the bounds of its own immunity. However, DNR's interpretation of the regulations is subject to timely appeal. The act provides a 30-day period when parties

may appeal forest practice decisions to the Pollution Control Hearings Board. RCW 76.09.205, .020(2). However, if there is no successful appeal, the final order is binding and not subject to collateral challenge. RCW 76.09.110. As the State points out, it is not unusual for individuals to learn they are affected by an administrative decision only after the window to challenge the decision has passed. Nonetheless, the State has embraced a policy of finality for these administrative decisions, particularly for land-use decisions. *Samuel's Furniture, Inc. v. Dep't of Ecology*, 147 Wn.2d 440, 454, 54 P.3d 1194 (2002) (referencing "the policy in Washington favoring administrative finality of land use decisions"). The legislature knows that finality runs against nonparties and has chosen not to change the law. *See id.* at 462; *see also Habitat Watch v. Skagit County*, 155 Wn.2d 397, 407, 120 P.3d 56 (2005).

The RMZ designation in this case was not properly challenged. Therefore, it was binding on all, including the defendants. Even an improperly drawn RMZ, if unchallenged, is binding on forestland owners who are required to leave those trees standing. Therefore, the statute provides immunity for parties who leave trees standing in an RMZ *even if* there is a question of fact about the propriety of the RMZ. Whether the RMZ was properly drawn is not material here.

The same logic disposes of another argument. Plaintiffs assert that they may raise the propriety of the RMZ in this tort suit because their claim falls into an exception of the Administrative Procedure Act: a court can review agency action when "the sole issue is a claim for money damages or compensation and the agency whose action is at issue does not have statutory authority to determine the claim." RCW 34.05.510(1). However,

assuming they are permitted to raise this issue, a judicial finding that the RMZ was improperly drawn would not change the fact that the defendants were required to leave the trees standing at the time of the accident. Therefore, an improperly drawn RMZ is not an issue of material fact and summary judgment was proper.

Plaintiffs argue that they have no meaningful way to object to the RMZ designation if the only way to challenge the RMZ is by an administrative process that was finalized several years before the accident occurred. But that was a decision made by the legislature. Under the law set down by the legislature, the defendants had a duty to leave these trees standing. Defendants cannot be held liable for complying with the State's requirement to leave the trees standing. We recognize Barry Chrisman suffered a great harm. But the law gives him no remedy in tort against these defendants.

CONCLUSION

We hold that the State, Sierra, and Precision are immune from suit under the Forest Practices Act immunity statute. Defendants are forestland owners who were required by law to leave RMZ trees standing and immunized by law when those trees fell. The plaintiffs' challenge to the RMZ is untimely. The trial court properly dismissed this case at summary judgment. We therefore reverse the Court of Appeals and affirm the trial court.

González, J.

WE CONCUR:

Stephens, C.J.

Yu, J.

Johnson, J.

Montoya-Lewis, J.

Madsen, J.

Whitener, J.

Gordon McCloud, J.

Toynbee, J.P.T.